UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN HENRY McMURRY,

             Plaintiff,                    Case No. 1:10-cv-1206

v.                                      Honorable Gordon J. Quist

PATRICIA CARUSO et al.,

             Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Caruso, Hubbell, Willard, Eicher and Lawrence. The Court also will dismiss Plaintiff's claims of conspiracy and of violation of the Americans with Disabilities Act. The Court will serve Plaintiff's Eighth-Amendment claims against Defendants Stevenson, Kakani, Pull, Baker, Samulak, Cohen, Almasi, Sudhir, Hirschler, Sohail, Whalen, Gordon and Prison Health Services.

**Discussion**

I.     Factual allegations

Plaintiff John Henry McMurry presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Lakeland Correctional Facility (LCF). The actions about which he complains, however, occurred between December 2006 and the present at the Bellamy Creek Correctional Facility (IBC), the Riverside Correctional Facility (RCF), the Muskegon Correctional Facility (MCF), the G. Robert Cotton Correctional Facility (JCF), the Earnest C. Brooks Correctional Facility (LRF) and LCF. Plaintiff sues the following Defendants: MDOC Director Patricia Caruso; JCF Doctors Vernon Stevenson, Savi Thri Kakani, Zivti Cohen, and Mehdi Almasi, Health Unit Manager Beth Gordon, Dietician Mary J. Eicher, and Resident Unit Officers (unknown) Pull, (unknown) Baker, and (unknown) Samulak; LCF Doctors Bhamini Sudhir, Richard Hirschler and Syed Sohail, Dietician Patricia Willard and Assistant Food Service Director Debbie Lawrence; MCF Nurses Mike Whalen and Mary Hubbell; and Prison Healthcare Services, Inc. (PHS).

Plaintiff's amended complaint consists of sweeping allegations that Defendants conspired over a period of nearly four years to deny Plaintiff adequate medical care for his various medical conditions. He sets forth seven purported causes of action, in which he broadly alleges that Defendants' conduct violated the Eighth Amendment and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, 18 U.S.C. § 1001, as well as state statutes, MDOC policies and procedures, and the state's contractual agreement with PHS. While the complaint contains no specific factual allegations, Plaintiff attaches a "Sworn Statement of the Factual Basis of the Complaint." (Ex. 2 to Am. Compl., docket #13-2.)

According to the attachment, Plaintiff had reconstructive right-knee surgery on June 30, 2006, while in the custody of the MDOC at Macomb Correctional Facility. He was placed in a cast until August 24, 2006, and after the cast was removed, he could not bend his knee at all. He received physical therapy from October to December 2006, which improved his knee flexion to 60%. On December 7, 2006, his physician recommended that he use an exercise bike daily, that he take 800 mgs of Motrin until June 2007, that he have a lower-bunk assignment, and that he be given soft-toe shoes with arch support.

On December 18, 2006, Plaintiff was transferred to IBC, which had no exercise bike. Plaintiff met with Nurse Valorie K. Hammond, who told Plaintiff that the facility was not required to honor the doctor's recommendations. Plaintiff asked for a transfer to a facility that could meet his needs for rehabilitation and accommodation. Although Hammond declined to recommend the transfer, Plaintiff was transferred to RCF on January 11, 2007. Plaintiff still had no exercise bike at RCF, but he was given a bottom-bunk assignment.

Plaintiff was transferred to MCF on March 14, 2007. At MCF, he was assigned to a top bunk. Plaintiff told Nurse Todd Hix that he could not climb to the top bunk. Hix told Plaintiff that he could not make a bottom-bunk assignment and that Plaintiff needed to kite Defendant Mike Whalen about the issue. Plaintiff immediately filled out an emergency request to Whalen on March 14, and he slept in his chair that night. The next day, Plaintiff was required by staff to climb into his bunk during count, upon penalty of receiving a misconduct ticket. Plaintiff attempted to climb to the top bunk, which had no ladder. Plaintiff climbed a chair and attempted to step onto the desk, but his knee did not bend, causing him to fall. Plaintiff reported the fall to custody staff, who told him again to kite healthcare. On March 16, Plaintiff addressed a kite to Defendant Whalen and Doctor Jason Kim. Defendant Whalen responded on March 28, 2007, though Plaintiff did not

receive the response until April 15. In the interim, Plaintiff also complained to Warden Shirlee Harry and Todd Hix, both of whom told him to address his concerns to Defendant Whalen. Whalen determined that Plaintiff's complaints were not urgent.

Plaintiff sent additional kites to Defendant Whalen and Dr. Kim, complaining about pain and his need for soft-toed shoes, on April 17 and 26 and May 5 and 7. On April 24, Plaintiff sent a similar kite to Defendant Mary Hubbell. Hubbell responded that the soft-toed shoes were not approved by the Regional Medical Officer.

Plaintiff was seen in health care on May 11, 2007 by Nurse Clarice Kanouse. She issued Plaintiff a temporary bottom-bunk detail until June 11, 2007. Plaintiff sent Defendant Whalen numerous complaints of lower back, hip and shoulder pain between May and August. Plaintiff was told that he was scheduled to see a doctor in August. His temporary bottom-bunk detail was extended, but Plaintiff was moved to a cell on the second floor. On September 11, Plaintiff saw Dr. Suzanne Hawkins. As a result of Plaintiff's history of a fall and pain, Hawkins ordered Plaintiff to be sent to Brooks Correctional Facility for an x-ray. Hawkins saw Plaintiff again on September 28, 2007, but the x-rays were not available. She also apparently requested an MRI. Dr. Hawkins told Plaintiff that another follow-up would be scheduled for about 10 days. No follow-up occurred.

Plaintiff filed numerous additional grievances about his back, hip and knee pain between October 10, 2007 and February 18, 2008. He also sent complaints about pain, unexpected bladder and bowel incontinence, and his various medications between March and May. On May 27, Plaintiff complained to health care that he had burning in the back of his throat, that swallowing food was painful, and that he had shortness of breath and wheezing. He was seen on June 23, 2008 by Nurse Rosa Rodriguez and Physician's Assistant Daniel Spitters. Spitters diagnosed GERD-

reflux and prescribed Gaviscon and Zantac, but refused to discuss Plaintiff's back issues. Between July and October, Plaintiff filed various healthcare requests about his pain and unexpected urination and bowel movements. He was seen in chronic care for his asthma on October 7, 2008, but Dr. Thornton would not deal with health issues other than the asthma. On October 20 and November 5, Plaintiff filed more kites about his pain and his bowel and bladder control issues. He was seen by Nurse Rodriguez on December 9, 2008, and he was referred to the doctor. When he did not receive a medical call-out within three weeks, Plaintiff filed another kite on January 9, 2009. On January 5, 2009, Plaintiff spoke with Dr. Ronald Graeser during the Chronic Care Clinic. Graeser examined him and determined that he needed an MRI.

On February 2, 2009, Plaintiff was taken to Hackley Hospital for an MRI, which revealed that he had a herniated disc extrusion/protrusion, and he was scheduled with a neurosurgeon for evaluation. On February 6, Plaintiff sent a kite complaining about pain and lack of bladder control. He received a response on March 3, advising him to take hot showers and Naproxin for his pain. On March 20, 2009, Plaintiff was transported to Duane Waters Hospital for a consultation with neurosurgeon Dr. Harish Rawal. Plaintiff alleges that no medical records were sent with him, so Rawal was unable to review the MRI necessary for a full evaluation. Plaintiff alleges that the failure to send medical records was an act of retaliation by unnamed Defendants.

Following his consultation with Dr. Rawal, Plaintiff sent multiple kites about pain between March 24 and April 1, 2009. He was seen by the physician's assistant, where he expressed his view that the Naproxen was not helping his back, hip or shoulder pain. No new medication was prescribed. Plaintiff again kited health services on April 23, describing his pain and his need for a lower bunk. Plaintiff was informed that his chart was sent to the medical service provider for review. Plaintiff sent a kite to Whalen and Hubbell on April 25, 2009, complaining about his lack

of bladder control. On April 27, 2009, Nurse Kanouse responded to the kite, informing him that his chart would be passed to the physician's assistant. On May 6, Plaintiff again requested a bottom-bunk detail and sought referral to the pain management team because of his unbearable pain and daily loss of bladder control.

On May 14, 2009, Plaintiff was transferred to JCF so that he would have access to Duane Waters Hospital for the physical therapy recommended by Dr. Rawal. At the time of his transfer, he had an accommodation for a ground floor cell and a lower bunk. Plaintiff was placed on the upper floor and allegedly was "harassed" by custody staff about his accommodations, ostensibly in violation of MICH. DEP'T OF CORR., Policy Directive 04.06.160(O). (Ex. B to Am. Compl., Page ID#93.) He kited health care on May 18, 2009, and he received a response the next day, advising him that an appointment had been scheduled for May 27, 2009. Plaintiff spoke with Resident Unit Advisor O'Dell, showing him the cell and bunk accommodations. O'Dell said he would contact Assistant Deputy Warden Larry Ford to approve the move. The move was approved and Plaintiff was moved to a bottom bunk in a ground-floor cell.

On June 3, 2009, Plaintiff was moved to the top bunk of an upstairs cell, ostensibly "under threat, intimidation, [and] duress by custody staff . . . ." (*Id.*) When Plaintiff objected to the move, Defendant Resident Unit Officer Pull allegedly told Plaintiff that, if he did not move, he would be sent to the segregation. (*Id.*) Plaintiff told Pull that the move violated MDOC policy directives. Plaintiff showed his accommodations to Defendants Resident Unit Officers Pull, Kisor and Samulak, who told him that they were not valid at JCF. In order to avoid a misconduct ticket, Plaintiff attempted to comply and to climb into his bunk. His back and knee gave out, and he fell to the floor. He was lying on the floor in his own urine and asked his cell-mate to call for medical treatment. Defendant officers Pull, Baker, Samulak and Kisor believed Plaintiff was faking injury

in order to get a bottom bunk. Plaintiff told Defendants that he could not get up, and they indicated that he could either get up or sleep on the floor. They left and did not check him again that night. Plaintiff remained on the floor all night. When his back stopped spasming in the morning, he asked his cell-mate to help him up. He then went to the desk, explained what happened, and asked Officer Spence and Resident Unit Supervisor Dunggy to call health care. Plaintiff was told to send a kite. On June 4, 2009, Plaintiff sent a kite explaining his fall and the refusal of staff to call for medical treatment.

On June 12, 2009, Plaintiff met with the physical therapist for evaluation. Between June 4 and July 28, Plaintiff sent several kites complaining about his reflux symptoms and breathing problems. He received an unspecified response on July 10, 2009. Plaintiff was seen by Defendant Physician's Assistant Savi Thri Kakani on July 17. Plaintiff requested new pain medication, described his GERD problems, reported his fall, and described blood in his urine and urinary and bowel incontinence. Kakani refused to authorize additional treatment or a special diet, saying that Plaintiff looked healthy to her. Plaintiff met with Defendant JCF Dietician Eicher on August 4, 2009. Eicher indicated on the computer record that Plaintiff was overweight at 237 pounds and had gained 30 pounds since his back injury. Plaintiff complains that Eicher's data entries were knowingly false, in violation of MICH. COMP. LAWS § 333.2894 and 18 U.S.C. § 1001(a)(1)(2)(3). Plaintiff was seen by Nurse Mary Wilson about his back pain and incontinence on August 5. Wilson allegedly did not examine Plaintiff.

On August 21, 2009, Plaintiff was examined by Dr. Vernon Stephenson. Plaintiff gave Stephenson a document entitled "Legal Constructive Notice," setting forth his claims of GERD, unexpected urination, blood in his stood, burning in the back of his throat, chest/abdominal pain, vomiting, dizziness, wheezing, and shortness of breath. Stephenson prescribed an anti-

depressant medication for pain and canceled the formal request for physical therapy because Plaintiff had issues of unexpected urination. All of Plaintiff's symptoms allegedly grew worse, and he submitted additional medical kites on numerous occasions between August 24 and October 12. Plaintiff was seen by Defendant Dr. Zivit Cohen on October 21, 2009, and Plaintiff handed her another "Legal Constructive Notice" about his symptoms. Cohen allegedly refused additional treatment for Plaintiff's GERD, and refused a diet.

Plaintiff submitted another kite on November 10, 2009 complaining about his various ailments. He was seen by Nurse Frances Hinsley, who allegedly was unable to answer questions about his problems. Plaintiff was told by Mary Wilson that Health Unit Manager Beth Gordon was refusing to approve his request for a bottom bunk because he was young enough to climb. Plaintiff kited Gordon on December 6, 2009, but she never responded.

Plaintiff was seen on December 8, 2009 by Defendant Dr. Mehdi Almasi about the blood in his urine, incontinence, GERD and pain. Plaintiff gave Dr. Almasi a "Legal Constructive Notice." Almasi prescribed Plaintiff ten days of pain medication but advised Plaintiff that he did not have the report from an ultrasound that Plaintiff apparently had been given. On December 23, 2009, Plaintiff saw Dr. Tomsen about his mental state, complaining that he was unstable because he was being laughed at and humiliated about his incontinence issues. Plaintiff also was seen on December 23, 2009 by Dr. Almasi, who advised Plaintiff that his ultrasound was normal but otherwise failed to provide additional treatment.

Plaintiff complained again on December 29, 2009 and January 11, 2010, adding to his list of problems to include swelling in his right knee and numbness in his right hand and toes. On February 4, 2010, Plaintiff was taken to the hospital for diagnostic testing in the form of an intravenous pyelogram of his bladder and kidneys due to his complaints of blood in the urine,

painful urination, vomiting, nausea and hypertension. On February 24, 2010, Defendant Dr. Cohen saw Plaintiff about the blood in his urine, hypertension and chronic back pain. Plaintiff told Cohen that Tylenol was not helping with the pain. Sometime thereafter, he was called to health services to give a supervised urine specimen. The urine was totally clear. Plaintiff alleges that the urine was clear because he had been drinking quantities of water all morning. On January 28, 2010, Defendant Dr. Cohen issued a reflux-diet accommodation, which was scheduled to continue until July 29, 2010.[1]

On March 11, 2010, Plaintiff was transferred to Carson City Correctional Facility (DRF), supposedly in retaliation for his complaints. He complains that his still-valid reflux diet detail could not be met at DRF. Plaintiff was seen by DRF Physician's Assistant George about his GERD. When presented with Plaintiff's "Legal Constructive Notice," George allegedly refused to deal with any other health issue. Plaintiff was transferred to LCF on May 26, 2010.

On June 28, 2010, Defendant Bhamini Sudhir saw Plaintiff about Plaintiff's complaints of blood in his urine, burning while urinating, incontinence, his need for incontinence pads, his need for pain medication for his back and his need to apply to the pain management committee, and his request for physical therapy. Defendant Sudhir allegedly refused to treat Plaintiff, telling him that the state was broke and that Plaintiff needed to buy over-the-counter medication from the store. Sudhir told Plaintiff that his reflux diet was being discontinued because the new standard menu would meet his needs. While she agreed that certain items caused him problems, she told him that suffering was good because it built character. Dr. Sudhir did, however,

---

[1] Although Plaintiff states that Dr. Cohen issued the accommodation on January 28, 2009, this appears to be a typographical error, as Plaintiff was not housed at JCF or treated by Defendant Cohen in January 2009.

put in a request for physical therapy. June 28, 2010 was Defendant Dr. Hirschler's first day at LCF, and he allegedly was present at the time of Plaintiff's appointment.

On July 28, 2010, Plaintiff saw Defendant Dr. Hirschler and presented him with another "Legal Constructive Notice." Defendant Hirschler told Plaintiff that his condition was not life threatening and that the company (PHS) was in place to save the State of Michigan money. On June 28, 2010, Plaintiff saw Defendant Dr. Syed M. Sohail and handed him the "Legal Constructive Notice." Sohail told Plaintiff that PHS had denied the request for physical therapy. Defendant Sohail gave Plaintiff a sheet containing exercises Plaintiff could complete on his own. Dr. Sohail denied additional pain medications and was told to buy over-the-counter medications from the store. Defendant Sohail allegedly denied treatment for any other problem.

On August 17, 2010, Plaintiff received an answer from Sohail about one of the assertions in the "Legal Constructive Notice," and Sohail instructed Plaintiff to kite to obtain an appointment to address additional issues. Plaintiff sent multiple kites. On October 20, 2010, he was called out to health care. Plaintiff saw Nurse Practitioner Raymond Ingraham and presented Ingraham with his "Legal Constructive Notice." Plaintiff alleges that Ingraham was rude and refused to deal with the issues in the Notice.

Plaintiff also kited Defendant Dietician Patricia Willard on July 7, 2010. On July 13, Plaintiff was served beef stew from the main food menu. The stew contained tomatoes, which allegedly caused Plaintiff to experience reflux problems. Plaintiff showed Food Service Supervisor E. Smith the stew, and she told Plaintiff to kite Defendant Willard. On June 27, Plaintiff again was given the beef stew, which caused him to vomit on his tray. Plaintiff took his tray to Defendant Debbie Lawrence, who told him that Willard had authorized the stew to be served to Plaintiff. Plaintiff alleges that Defendant Willard conspired with Defendant Lawrence to cause Plaintiff pain.

On July 25, 2010, Willard recommended that Plaintiff's diet detail be renewed for three months, until October 28, 2010.

On October 21, 2010, Plaintiff was transferred to the Earnest C. Brooks Correctional Facility (LRF) in order to participate in the Legal Writing Program. At intake, Nurse Holly Smyth supplied Plaintiff with his reflux-diet detail. Plaintiff showed the detail to the food services staff, and they made a copy. After serving him his detail on October 22, however, the special-diet cook told Plaintiff that Assistant Food Service Director Daniels had told staff not to serve Plaintiff any more because his diet detail was invalid. Plaintiff was denied his special diet between October 24, 2010 and December 16, 2010. In response to Plaintiff's kites, Dietician Barbara Anderson told Plaintiff that his diet detail had expired and would not be renewed because he could eat from the regular menu. Plaintiff alleges that Defendant Dieticians Eicher and Willard and non-Defendant Barbara Anderson are in violation of their qualifications under MICH. COMP. LAWS § 333.18351.

For relief, Plaintiff seeks declaratory and injunctive relief in the form of specific medical treatments. He also seeks compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Conspiracy

Plaintiff makes sweeping allegations that Defendants at each facility in which he was housed between 2006 and the present conspired to deprive him of his rights under the Eighth Amendment, the ADA, and various state laws and MDOC policies. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not

merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140 at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's allegations of conspiracy are vague, conclusory and speculative. He alleges no facts that would support any of the elements of conspiracy. He therefore fails to state a claim for conspiracy.

### B.    State Law and Policy

Plaintiff alleges that Defendants violated his federal constitutional rights when they failed to comply with various MDOC policies and statutes. Defendants' alleged failure to comply with an administrative rule or policy or state statute does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not

create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Plaintiff's allegations based on MDOC policies and state law therefore fail to state a claim.

## C. ADA Claims

Plaintiff next broadly alleges that Defendants violated the ADA whenever they failed to provide him the medical treatment or accommodations to which he believed he was entitled. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Section 12131 of the ADA provides that, "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, a plaintiff must show that he is a "qualified person," that he has a "disability," and that he is being excluded from a "service, program, or activity" of the state.

Here, Plaintiff does not provide any factual support for his claim. In particular, Plaintiff does not allege that he suffers from a disability or that he was excluded from any service, program or activity because of that disability. Therefore, he fails to state a claim under the ADA against any Defendant.

## D. Eighth Amendment Claims

The bulk of Plaintiff's complaint alleges that the various Defendants were deliberately indifferent to his serious medical needs. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more

than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer,* "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle,* 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle,* 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer,* 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to

constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

### 1. Defendant Caruso

Plaintiff fails to make specific factual allegations against Defendant Caruso, other than his allegation that Caruso conspired with all of the other Defendants. As the Court previously discussed, Plaintiff's allegations of conspiracy are wholly conclusory and contain no specific factual support. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to

them which would suggest their involvement in the events leading to his injuries"); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendant Caruso.

Moreover, assuming that Plaintiff intends to alleged that Caruso is responsible for the actions of her subordinates, he also fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Caruso engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

2.      Treatment at IBC

Plaintiff alleges that, when he was transferred to IBC in December 2006, Nurse Valorie Hammond declined to honor his doctor's recommendations and refused to request a transfer for Plaintiff. Plaintiff, however, has not named Nurse Hammond or any other IBC employee as a Defendant in this action. His complaints about his treatment at IBC therefore fail to state a claim.

3.      Treatment at MCF

Plaintiff alleges that, during his confinement at MCF from March 14, 2007 to March 20, 2009, Defendant Nurses Mike Whalen and Mary Hubbell were deliberately indifferent to his serious medical needs. Plaintiff makes only a few factual allegations against Defendant Nurse Hubbell. First, he alleges that she responded to his April 24, 2007 kite about his soft-toed shoes by informing him that the request had not been approved by the Regional Medical Officer. Second, he alleges that he sent her a kite on April 25, 2009, to which he received a response on April 27, 2009, indicating that his complaint of incontinence had been forwarded to the physician's assistant. Third, he alleges that, on May 7, 2009, he wrote another kite to Whalen and Hubbell that complained about his incontinence, to which he did not receive a response. Plaintiff, however, was transferred to JCF on May 14, 2009 for treatment of his various problems. Finally, he alleges that on February 27, 2009, Defendant Hubbell told him the results of the MRI and x-ray tests, which had been performed at Hackley Hospital on February 17, 2009.

Plaintiff's allegations against Hubbell fail to demonstrate either prong of the deliberate-indifference standard. Although Plaintiff's alleges that a doctor had recommended that

he be given soft-toed shoes, he at no time describes what risk of physical injury was posed by the failure of any Defendant to ensure that he received the shoes. He therefore cannot demonstrate the existence of an objectively serious medical need for such shoes. In addition, Plaintiff fails to indicate that Defendant Hubbell acted with requisite subjective intent to deprive him of soft-toed shoes. Instead, Hubbell merely informed Plaintiff that the recommendation for soft-toed shoes had not been approved by the Regional Medical Officer. Similarly, Plaintiff acknowledges that he received a response to his April 25, 2009 grievance within two days and that he was transferred only a week after his May 6 grievance about the same subject. In addition, Hubbell's February 27, 2009 report to Plaintiff of the results of his February 17, 2009 MRI and x-rays was directly responsive to Plaintiff's request for those results. Plaintiff's allegations fail to support a conclusion that Hubbell acted with the requisite subjective intent to ignore any serious medical need. Plaintiff therefore fails to state a claim against Defendant Hubbell.

Upon review, the Court concludes that Plaintiff has alleged sufficient factual allegations to warrant service of his Eighth-Amendment claims against Defendant Whalen.

4. Treatment at JFC

Plaintiff alleges that JCF Doctors Savi Thri Kakani, Vernon Stephenson, Zivti Cohen and Mehdi Almasi, Resident Unit Manager Beth Gordon and Resident Unit Officers Pull, Baker and Samulak violated his Eighth-Amendment rights while he was housed at JCF between May 14, 2009 and March 11, 2010. The Court concludes that Plaintiff's allegations against these Defendants are sufficient to state a claim.

Plaintiff, however, also alleges that Defendant JCF Dietician Mary Eicher violated his Eighth Amendment rights by making an entry in his electronic medical records about his weight,

which he alleges she knew was false. An allegation that a Defendant made a false entry in his

medical record about such an insignificant thing such as his weight, falls far short of demonstrating

either component of the deliberate-indifference standard. Plaintiff does not allege how the false

entry increased his risk of serious medical need. Plaintiff therefore fails to state an Eighth-

Amendment claim against Eicher, and she therefore is entitled to dismissal from the action.[2]

### 5. Treatment at DRF

Plaintiff alleges that he was denied treatment for his GERD and his other medical

conditions while he was housed at DRF between March 11, 2010 and May 26, 2010. Plaintiff,

however, names as a Defendant no employee of DRF. Accordingly, his allegations about his

treatment at DRF fail to state a claim.

### 6. Treatment at LCF and LRF

Plaintiff was transferred to LCF on May 26, 2010. He subsequently was transferred

to LRF on October 21, 2010. Plaintiff is again housed at LCF, though it is unclear when he was

transferred back. Plaintiff alleges that Defendant LCF Doctors Sudhir, Hirschler and Sohail denied

him adequate medical care for his many health complaints, and that Defendant PHS refused to

authorize medically necessary treatment, such as surgery and physical therapy. He also alleges that

---

[2]Plaintiff also alleges that Eicher's data entry violated MICH. COMP. LAWS § 333.2894 and 18 U.S.C. § 1001(a)(1)-(3) and that she violated her duties as a dietician under MICH. COMP. LAWS § 333.18351. As the Court previously has discussed, an allegations that a Defendant's conduct violated state law does not state a claim under § 1983. Moreover, to the extent that Plaintiff's allegation presents a supplemental claim against Defendant Eicher under state law, the Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Finally, Plaintiff has no authority to prosecute any individual under a federal criminal statute. A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986). As a consequence, Plaintiff's invocation of 18 U.S.C. § 1001 fails to state a claim.

Defendant LRF Dietician Willard failed to place him on a modified reflux and low-salt diet that did not include onions, peppers, peanut butter, and processed meet between July 7, 2010, when he sent her a kite, and July 25, 2007, when she recommended that his reflux diet be continued. Plaintiff also alleges that Willard conspired with Defendant Assistant Food Service Director Lawrence to serve him beef stew (which contained tomatoes) on July 13 and July 27, 2007.

The Court concludes that Plaintiff's allegations warrant service of his Eighth-Amendment claims on Defendants Sudhir, Hirschler Sohail, and PHS. Plaintiff's allegations against LCF Defendants Willard and Lawrence, however, fall short of demonstrating deliberate indifference to his serious medical needs. According to Plaintiff's own allegations, Willard acted within three weeks of Plaintiff's request to reauthorize his reflux diet. Plaintiff alleges that, in the intervening three weeks, he was served an item that caused him a problem with his GERD on only two occasions. Allegations about temporary inconveniences, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F.Supp.2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal citation omitted)). Plaintiff therefore fails to state a claim against Defendants Willard and Lawrence.

Finally, although Plaintiff alleges that various persons ignored his dietary needs after he was transferred to LRF, he names no LRF employee as a Defendant in this action. Accordingly, his claims based on his treatment at LRF fail to state a claim.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Caruso, Hubbell, Willard, Eicher and Lawrence will be dismissed under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because the allegations against them fail to state a claim. The Court also will dismiss for failure to state a claim all of Plaintiff's claims of conspiracy and of discrimination under the ADA. In addition, the Court will dismiss for failure to state a claim Plaintiff's allegations about his treatment while he was housed at the Bellamy Creek Correctional Facility, the Carson City Correctional Facility and the Earnest C. Brooks Correctional Facility. The Court will serve Plaintiff's Eighth-Amendment claims against Defendants Stevenson, Kakani, Pull, Baker, Samulak, Cohen, Almasi, Sudhir, Hirschler, Sohail, Whalen, Gordon and Prison Health Services.

An Order consistent with this Opinion will be entered.


Dated:  March 23, 2011                                   /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE